Opinion delivered May 8, 1889.

No. 2709.

## M. G. KNOWLES v. THE STATE.

1. THEFT—PRINCIPAL OFFENDER—FACT CASE.—The indictment in this case charged the appellant as a principal in the theft of a mare, but the evidence wholly fails to connect him in any manner with the original taking of the said mare. *Held*, that such proof is insufficient to support a conviction for theft.

2. SAME—CHARGE OF THE COURT—The charge of the court defining principals was abstractly correct, but it failed to apply the law to the facts

developed on the trial. To supply this omission the defendant requested the court to instruct the jury that, "in order to convict the defendant, they must find from the evidence that the defendant was as a principal, as hereinbefore defined, concerned in the original taking of the mare; and if they find from the evidence that one Jeff Griffin first took possession of the mare alleged to be stolen, and delivered the same or sold the same, for himself or for one J. J. Elkins, to defendant, then they should acquit the defendant although they should believe that the original taking of said animal by Griffin was fraudulent and that defendant knew it was fraudulent." *Held*, that the refusal to give such instruction, under the proof in this case, was error.

3. Same—In its motion for rehearing, the State contends that the complicity of the defendant in the offense charged is shown by the testimony of the witness W., to the effect that defendant told him that "all the connection Griffin had with the mare was this: that he, defendant, sent said Griffin to get the mare for him and to bring her to him"—the effect of which would be to constitute G., an innocent agent acting by command of the defendant, and the defendant by reason thereof (all other elements of theft existing) the sole principal offender. *Held*, that if said testimony of W. imports such a case, then the charge of the court was fatally erroneous in not submitting that phase to the jury; wherefore rehearing is refused.

APPEAL from the District Court of Gonzales. Tried below before the Hon. George McCormick.

The conviction in this case was for the theft of a mare, the property of some person to the grand jurors unknown, in Gonzales county, Texas, on the twenty-third day of April, 1887. A term of five years in the penitentiary was the penalty assessed against the appellant.

· M. C. West was the first witness for the State. He testified that he was a member of the grand jury that found this indictment. Witness went to his home during the time court was in session, and while there the theft of the "*RD*" mare was under investigation. Defendant came to witness's house and told him that he bought the said mare from one John Smalley, and that "all the connection Jeff Griffin had with the mare was this, that he, Knowles, sent said Jeff Griffin to get the mare for him, Knowles, and to bring the mare to him, Knowles." The grand jury inquired of a large number of witnesses about the ownership of the mare, but no one of them knew.

Zack Davis testified, for the State, that he knew the alleged stolen mare. That animal ran with witness's father's horses on the range in Gonzales county, near the Wilson county line,

for six or seven years. Witness last saw that mare late in April, 1887, in Gonzales county. She was then in the possession of Jeff Griffin, being one of the drove of witness's father's horses which Griffin was then driving towards the Wilson county line. Witness saw the said drove of horses soon afterwards, but the said mare was not then among them. The witness never knew an owner for said mare, and so testified before the grand jury. He never saw her nearer the Wilson county line than a quarter of a mile.

Deputy hide and cattle inspector Dickey, of Wilson county, testified that late in April or early in May, 1887, he inspected a bunch of horses for the defendant, who exhibited bills of sale for all of them except two mares, one being the animal involved in the prosecution. With reference to his possession of the two animals without bill of sale, the defendant explained that he came by the house of Joe Blain, from whom he purchased one, —and the witness understood him to indicate the one described in the indictment—to get the bills of sale, but that Blain was not at home. He claimed to have bought the other horse from J. J. Elkins. On that explanation witness passed the two said mares.

Sheriff W. E. Jones, of Gonzales county, testified, for the State, that, subsequent to his indictment at the July term, 1887, the defendant came to him several times and appealed to him to see the district attorney in his behalf about this case, and get the said district attorney to accept him as State's evidence. He proposed that, if he would be accepted as State's evidence, he would testify fully about this theft, and against Barber and Blain, against whom other indictments were pending. In the same conversations defendant claimed that he bought the *RD* mare from Jeff Griffin, who was also under indictment.

Dick Glover, deputy sheriff of Gonzales county, testified, for the State, that, in the summer of 1887, the defendant told him that he bought the *RD* mare from John Smalley, and showed him a bill of sale, conveying the said mare, signed "John Smalley." Witness knew the mare well, but never knew to whom she belonged. She always ranged in Gonzales county.

The State next introduced in evidence the recognizance entered into by the defendant to appear at the July term, 1887, of the district court, and answer to this indictment, the judgment nisi entered thereon, and the judgment final on the forfeiture of the recognizance.

Deputy Sheriff Chenault testified that defendant made default at the July term, 1887, and was arrested in September, 1887.

The State closed.

Martin Mahula was the first witness for the defense. He testified that he lived in Bexar county, near St. Hedwig. While traveling the road, in Bexar county, in the summer of 1886, the witness met a man who gave his name as James Elkins. Elkins told witness that there was an *RD* mare in Gonzales county for which he wanted to trade with witness, the said brand of stock belonging to witness. He then proposed to trade witness a mare in the "heart" brand, which ran on the range near the witness's place in Bexar. The trade was made but no bills of sale were passed at that time. In September, 1887, witness received a letter from Elkins asking for a bill of sale to the *RD* mare. Witness sent him the bill of sale, demanding one in return for the "heart" mare, which Elkins sent him. Witness bought the *RD* brand of stock from one Finley in 1885. That brand originally belonged to W. R. Davenport.

On his cross examination, this witness said that he had never seen James Elkins prior to meeting him on the public road in 1886. He did not know of the *RD* mare running in Gonzales county until he traded with Elkins, and only claimed her then by the brand.

J. J. Elkins testified, for the defense, substantially as did Mahula about the trade between him and Mahula. He stated further that, in April, 1887, he sold the *RD* mare to the defendant. Afterwards, when the defendant was taking the said mare and other horses to the San Antonio market, witness met him at the Sour Springs, in Wilson county, and had a talk with him about the said mare.

On his cross examination, the witness said that he was before the grand jury about this case, but had no recollection of being interrogated about the ownership of the *RD* mare. He did not execute a bill of sale to Mahula until September, 1887, after the indictment was found and the defendant had forfeited his recognizance. It was after that time that he told Paul Murray that he, witness, had traded one of his, Murray's, mares to Mahula. Mahula and witness exchanged bills of sale by letter in September, 1887. Witness several times saw Paul Murray between the time of the trade with Mahula and the indictment of the defendant, but never mentioned the trade to him. In

---

---

the spring of 1887 Jeff Griffin came to where witness and John Markham were at work, and told witness that he was getting up stock for the defendant, and witness told him to take up any of his stock he could find "on the outside."

James York testified that he knew the *RD* mare on the range, and understood that she belonged to W. R. Davenport. He never heard any person claim her, but heard that Davenport owned the *RD* brand. Witness was before the grand jury in this case and was interrogated about the ownership of the said mare.

Paul Murray testified, for the defense, that he had known the alleged stolen mare seven or eight years, during which time it was his understanding that she belonged to W. R. Davenport. On cross examination the witness said that after the defendant had forfeited his recognizance in this case, J. J. Elkins came to him, witness, and offered to pay him twenty-five dollars for a mare belonging to him, witness, which he, the said Elkins, told witness he had traded off. Witness declined to accept the twenty-five dollars, as it was his understanding that the said mare had a yearling colt when traded off by Elkins. Mr. Elkins finally paid witness forty dollars for the mare and colt. The defense closed.

Two or three members of the grand jury testified that Elkins was interrogated before the grand jury about the owner-ship of the alleged stolen animal, and he swore that he did not know who owned her.

*W. S. Fly* and *W. W. Glass*, for the appellant.

*W. L. Davidson*, Assistant Attorney General, for the State.

HURT, JUDGE. This conviction was for the theft of a mare. Though we have carefully considered all the assignments of error, we will discuss only such as we think are of importance.

The charge of the court with regard to the venue was correct. The mare was taken in Gonzales county. This was clearly shown, and if appellant was a principal in the taking, the venue would be in Gonzales county whether appellant was the actual taker or not. The contest, therefore, is back of this. It is whether the proof shows that appellant was a principal. Did he actually take the mare, or was she taken by some other person under such a state of facts as constituted him a prin-

cipal? If not, he should not be prosecuted in any county for the *theft* of the mare, because not guilty of *theft*.

It is very clearly shown by the statement of facts that Jeff Griffin took the mare, and that appellant was not present when she was taken. Griffin is also indicted for the same theft. Elkins not only swears positively that he sold the mare to appellant, but that "Jeff Griffin told him that he was getting up stock for defendant, and he (Elkins) gave him authority to get any of his stock that he found on the outside." These are the facts bearing on the issue of principal *vel non*.

There is no proof that appellant and Griffin or any other person had conspired to steal the mare. It is not shown that appellant advised or commanded Griffin to steal the mare, and, if there was such proof, then there is no proof that the appellant, at the time the mare was taken, though not present, was doing any act whatever in furtherance of the common purpose. It is not even shown that appellant knew that Griffin was going to get up the mare and bring her to him. The proof fails to show that he knew that Griffin had taken the mare until she was delivered to him by Griffin in pursuance to instructions given him by Elkins. With such a dearth of testimony bearing upon this issue, principal *vel non*, we can not sanction this conviction.

While the charge of the court announced the correct principles relating to principals and accomplices, there was no direct application of these principles to the case in hand. Counsel for appellant in their charge number one sought to make the application, but the court refused the charge. Under the circumstances of this case, we think this was error.

The judgment is reversed and cause remanded.

*Reversed and remanded.*

Opinion delivered at Galveston March 23, 1889.

[Subsequent to the rendition of this opinion, the Assistant Attorney General filed a motion for rehearing, which was taken under advisement and transferred to the Austin branch of this court, where, on the fourth day of May, 1889, the said motion was disposed of by the opinion which follows. The case is now reported as of the Austin term, but, as the record belongs to the Galveston branch, under the Galveston file number.]

Hurt, Judge. At Galveston we reversed the judgment in this case with a written opinion by the present writer. In that

opinion it was stated that there was no proof that this appellant advised or commanded Griffin to steal the mare, or that this appellant knew that Griffin was going to get up the mare and bring her to him, etc.

It is contended by the State that there is such proof, and we are referred to the testimony of M. C. West, who testified that appellant stated to him "that all the connection Griffin had with the mare was this,—that he, Knowles, had sent said Griffin to get the mare for him, and bring her to him."

The writer understood that this statement was introduced in evidence to prove that he, appellant, was endeavoring to shield Griffin, who was under indictment for the theft of the mare, and not as a confession of facts from which Griffin's innocence might be inferred. But conceding that this view was not correct, then another phase of the case is presented; that is that the mare was taken by an innocent agent instigated thereto by appellant.

The charge of the court—that part relating to the question of principals—is evidently based upon the theory that all the parties to the transaction were guilty participants. The theory that Griffin was the innocent taker at the instance of the appellant, thus making appellant a principal, is not hinted at in any part of the charge; and it is upon this theory that the Assistant Attorney General in this motion contends that appellant is shown to be a principal. The facts failing to show appellant a principal upon the hypothesis that Griffin was a guilty taker, yet, all the elements of theft attending, if Griffin took the mare innocently and was requested to take her by appellant, he, appellant would be the principal and this conviction as principal would be correct. But this view of the case was not presented to the jury in any part of the charge. The jury were not called upon to determine whether or not Griffin was innocent in taking the mare. They reached the conclusion that appellant was a principal from the charge of the court based upon the theory that Griffin was a guilty participant, and not upon the ground that he was an innocent agent. As the appellant stands convicted of theft as a principal, to sustain the conviction the proof must show him to be a principal, and the jury must be correctly instructed what in law constitutes a principal, in all cases in which it is left in doubt as to whether he is a principal or an accomplice. The court properly instructed the jury as to what constitutes a principal upon the hypothesis

that Griffin was guilty in the taking of the mare, but failed to instruct upon the theory that he was an innocent agent. This omission in the charge was error of such serious character as to require a reversal of the judgment, and hence the motion for rehearing is overruled.

*Motion overruled.*

Opinion delivered May 4, 1889.